THE ANDREWS & HITCHCOCK IRON CO. v. THE I. D. SMEAD HEAT-
ING AND VENTILATING CO.

1. MODE OF ESTABLISHING THE LAWS OF ANOTHER STATE.

Where a party in an action offers to put in evidence the laws of another state,
in order to be entitled to offer such laws in evidence he must have pleaded
the existence of such laws.

2. PROOF OF SUBCONTRACTOR'S LIEN.

S. carrying on the business of manufacturing and setting up heating furnaces,
incorporated the same into two companies, one company to do foundry work
and the other to do the general business; the companies became insolvent and
a receiver was appointed for each, the receiver of the foundry company un-
dertook to subject moneys arising on certain contracts to the payment of al-
leged subcontractor's liens in favor of the foundry, *held*, under the facts of
the case that no subcontractor's lien existed.

HAYNES, J.

We have heard this case upon the evidence and the arguments of
counsel. There is a mass of papers in the case, and a great deal of evi-
dence and a great many points have been raised and argued by counsel.
In the view that we take of the case, it will not be necessary to make
any very extended statement of the case or to go into any extended dis-
cussion of the questions. Suffice it to say, it appears that the Smead
Heating & Ventilating company (which I shall call the Ventilating com-
pany) and the Smead Foundry company (which I shall call the Foundry
company), were organized in this city out of a business originally car-
ried on by Isaac D. Smead & Co. The business of the company orig-
inally had been, among others, the manufacture of the Smead heating
apparatus—a furnace Smead & Co. (who was Isaac D. Smead, in fact,)
had become very much involved, and in January, 1893, or prior to that
time, the Ventilating company had been organized; and about that time
there had been some change in the management of the company, but
not in the organization of the company—that is to say, it was the same
corporation. Smead had also organized what is known as the Foundry
company, and in the carrying on of the business, the Ventilating com-
any had been in the habit of taking contracts for the putting in of fur-
naces and heating apparatus, in public and pivate buildings, and certain
of the work had been performed by the Foundry company and furnished
to the Ventilating company, and the Ventilating company had then put
the same into the buildings and had drawn their pay therefor. The mat-
ters ran along in this shape for a year or so, and both of these companies
had evidently become very much involved, if not wholly insolvent, and
a receiver was appointed by the court of common pleas for each of these
companies, who received and took charge of the moneys, the receiver
for the Foundry company being Harold H. Smith and the receiver of the
Ventilating company being Isaac D. Smead, at first, but subsequently
Charles W. Bond. After the appointment of the receiver of the Foundry
company, he was permitted by the court—by an order, I understand—to
prepare and file certain claims, under the mechanics' lien law in favor of
that company and against the Ventilating company, they were subcon-

tractor's liens filed upon claims which it was represented that the Foundry company held against the Ventilating company, arising out of contracts which the Ventilating company had, and it is claimed that proper notices were served upon various and sundry corporations who were owing the Ventilating company, which company was at that time putting in furnaces and apparatus in their respective buildings, or had done so and were not yet fully paid. The claims of the respective parties as they are presented before us stand somewhat in this condition: Sundry persons had loaned to the Ventilating company moneys, in various sums—some of them in large sums—and at the time that the loans were made to the parties they had taken as collateral security for the moneys thus advanced an assignment of contracts, some of one contract and some of another, as security for the payment of the money thus advanced, with the understanding or arrangement made at the time the money was advanced, as it is claimed, made with the president and manager of the company, that the moneys thus advanced should be used for the completion or performance of the particular contract which was assigned. The Foundry company filed these sub-contractors' liens, as I have stated, and has set up the various liens, it claims, as between itself and these various plaintiffs, and claims a priority over the plaintiffs in the moneys which are now in the hands of the court. It should be stated that under the order made by the court of common pleas, the moneys arising out of these various contracts have been paid, by the order of the court, into the hands of the receiver, and is now in this court to abide the order of court and subject to the various liens of the parties the same as they would have been if in the hands of the parties who paid them. The liens are set up and there are stipulations in regard to the facts, as to the sub-contractor's liens having been prepared and filed. Quite a number of them arose upon contracts which were made with parties who reside out of the state of Ohio—some in Michigan, and some in the state of Indiana, and some in the state of Kansas; others are upon buildings which are situated in the state of Ohio. Counsel representing these claims sought to offer in evidence and tendered in evidence the laws of the various states under which they claim their right arose; objection was made on behalf of the plaintiffs, that these laws ought not to be admitted for the reason that they had not been pleaded. An examination of the pleadings—we have not examined them all, but we understand that they are all substantially alike—shows that there is no reference whatever to such laws much less are the statutes pleaded, we took this testimony which was offered under advisement with the understanding that we should rule upon it when we came to decide the case after hearing the arguments of counsel. We are clearly of opinion, that under the law of the land in regard to pleadings, that it was due from counsel who drew these pleadings, if they intended to offer in evidence these various statutes, or if they were claiming any rights arising under the statutes of these respective states, to have pleaded the statutes in due and proper form, and we think it would be error for this court to admit them in evidence without having the same properly pleaded, and for that reason we sustain the objection made by counsel to the reception of those statutes. These moneys were loaned, some perhaps in the latter part of 1892 and early in 1893 and on up somewhat later than 1893. The work was carried on during the summer of 1893 and extended into the spring of '94.

Just at what time the receiver was appointed, I am not now advised. One of the first points of contention in regard to these claims, is, that the Foundry company had no right, under the facts of the case—under the conditions on which the business was carried on—and the way the work was done—to any sub-contractor's lien upon this money. And we are of opinion that that contention is right. We have been presented here with the opinion of the able judge who delivered the opinion in this case in the court of common pleas, and since we have decided this case I have looked at it, and with the reasoning of the judge upon that question I am in full accord and deem it unnecessary to recite to any great extent the views which have been stated by him. The substance of the matter is, that the real company was the Ventilating company, which took the contracts and performed the work, and, as we understood the evidence in the case, has received all the profits made upon the contracts, if any were made. The work that was done by the Foundry company was simply done, as we understand it, at its cost price, or the cost of the labor and material, so that practically there would be no profit, so far as we can see accruing at any time to the Foundry company, and the question was put to counsel by one member of the court in regard to the matter, and we are unable to see, from their statement of the matter, how any profits could accrue to the Foundry company. Perhaps that is not very material here, but it is a fact in the case. Now there is another fact that has a bearing upon this, and that is, that in 1893, in June, there was executed by the Foundry company to the Ventilating company a lease of its foundry property, with its machinery and the right to carry on business there, for the sum of $3,000 per annum. That lease was to date from January previous, being January, 1893, to run for a year with the right to renew it at the option of the lessee. It is said that there was no possession taken under that contract, that it was treated as a dead letter. Nevertheless the contract was made, and executed and recorded, for some purpose. It certainly is an item of evidence to show that the Ventilating company was looked upon as the principal party in interest, as the party that was really carrying on the whole work. Further, the manner in which the work was done as between the parties, shows very clearly that that was the real condition of affairs as between those companies, for while the work was sent to the Foundry company and was done there, payments were made by checks made by the Foundry company on the Ventilating company. It is shown that those checks when they came in were credited to the Foundry company and they were paid by the Ventilating company and were carried along in their books as one continuous running account with the Foundry company, and it is said, and I think the claim is true, that the credit account was usually in favor of the Ventilating company, at least for a very long period of time, and perhaps down to the close of the business. So that the evidence seems very clearly to us to show that the real party in interest was the Ventilating company and that this Foundry company was treated by both parties simply as an arm of the business of the Ventilating company— as one method of carrying on one department of its business, and it is very certain, under the decision of the supreme court of Ohio, as set forth in the 38 O. S., that there could be no mechanics' liens in favor of the Foundry company, as against the Ventilating company, if they had determined to make the lien direct as between the Foundry company and the Ventilating company. Nevertheless, that case is to be distinguished from the present case in regard to the facts, in this, that this is a sub-contractor's

Andrews & Hitchcock Iron Co. v. Smead Heating Co.

lien, and if the Foundry company is entitled to a subcontractor's lien, it would have a right to file their claim without regard to whether it had a direct claim against the Foundry company. But that brings us to really another point in the case, which we consider fatal to this claim of the Foundry company, and that is, that, in this course of dealing, the claims of the Foundry company upon particular contracts cannot be distinguished. It is possible that some articles that came from the shops of the Foundry company into these various buildings, might be traced; but that is only a part of the case. The questions are: First, whether the articles have been furnished? and, Second, whether they had been paid for? And, in the manner in which this account has been kept, it cannot be shown that these various accounts have not been paid off and satisfied by the Ventilating company, except by showing—asserting the claim—that the Foundry company, or its receiver at the present time, has a right to change these various payments which have been made and apply them to any particular contract they may choose and leave the other contracts to be followed under the mechanics' lien law. We are clearly opposed to any such a claim. We think the plaintiff has no such right. We think the receiver has no such right. We think these accounts were made as running accounts, from day to day. The claims came in and were passed to the credit of the Foundry company, and were paid by charges in gross to the Foundry company, and the moneys were paid from time to time and they should be applied in the usual and ordinary manner to pay off the claims which were first found to be existing upon the ledger, and if any balance remained in favor of the Foundry company, it should be paid to those who stand last upon the column. We are very clear in our minds, in fact, that as between the Ventilating company and the Foundry company, these claims have been paid and satisfied, and so no liens or claims can be founded on them.

It is said here that there is a peculiar equity in this case, because there are certain laborers that are unpaid, and an account is presented to us as a lien of some $13,000 or $14,000, showing the services of laborers where the laborers have not received their pay, extending from some time in 1893 until the year '94, and perhaps down to the date of the closing of the business. The rights of the laborers are to be protected, and we understand that they are protected by the statute of the state, and of course, it is the duty of the court, as well as its pleasure, to enforce the law in their favor. It should be remembered, however, that these laborers were working for the Foundry company at stated sums per day. There is not, and there can be no claim made that they have any right or lien, or right to file any mechanic's lien, or any sub-contractor's lien, as against this Ventilating company; but it is sought to work out through the receiver what they claim to be the equities and rights of these particular individuals, and it is claimed that their liens are preferable to the liens of the plaintiffs. The statute of this state, which is, I believe, still in force, provides—and I read from the insolvent debtor's act:

6355. All taxes of every description assessed against the assignor upon any personal property held by him before his assignment shall be paid by the assigned or trustee, out of the proceeds of the property assigned in preference to any other claim against the assignor, and every person who shall have performed any labor as an operative in the service of the assignor, shall be entitled to receive out of the trust funds, before the payment of the other creditors, the full amount of the wages due to

such person for such labor performed within twelve months preceding the assignment, not exceeding $300. But the foregoing provisions shall not prejudice nor in any way affect securities given or liens obtained in good faith for values, etc."—and this rule applies, we think, to receivers as well as assignees.

But judgments by confession should not be considered. So that within the statutes of the state of Ohio which we are to enforce, persons who advance money and obtain liens upon the property of the company are to be protected. It is true that under the statute it is possible that if the liens were sustained in favor of the Foundry company they might override the demands that have been made by the plaintiff; and that brings me to a proposition that I had in my mind, and that is, that the individual laborer have no rights under the statute; that whatever rights are worked out through the assignee under the mechanic's lien law must stand upon the statutes of the state. The assignee has no rights except those which the statute gives him, and while he may be entitled to a liberal construction of the statutes, nevertheless his claim is a statutory claim, and he must bring himself within the terms of the statute.

I believe that covers the leading points in this case. I do not at this moment remember of any further points that it is necessary to discuss here. These legal points are decisive of the. case so far as the claims of the Foundry company are concerned, and we hold that the claims are not valid claims against the funds which are in the hands of the receiver. In reference to the claims of the plaintiff, of course they will be worked out upon the same general plan as they were worked out in the court of common pleas. There was one claim where the money had not been paid over, which was represented by Mr. Thurston, I don't remember, at this moment, the fact of it, and it may be passed upon at any time, on any question arising in regard to it, in the drafting of the journal entry.

*Hurd, Brumback & Thatcher*, for the Foundry company.

*King & Tracy, G. H. Beckwith, A. L. Smith, W. S. Thurston and others*, for several Defendants.